# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>APF Co., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 98-1596 (PJW)<br><br>Jointly Administered<br><br>Objection Deadline: August 23, 2007 at 4:00 p.m.<br>Hearing Date: August 30, 2007 at 2:00 p.m. |

### MOTION OF JOSEPH A. PARDO, TRUSTEE OF THE FPA CREDITOR TRUST, FOR ENTRY OF AN ORDER APPROVING MECHANICS OF DISTRIBUTIONS TO UNSECURED CREDITORS, INCLUDING (i) DE MINIMIS DISTRIBUTION THRESHOLD AMOUNTS AND (ii) SUBSTANTIVE CONSOLIDATION OF THE DEBTORS' ESTATES FOR DISTRIBUTION PURPOSES, PURSUANT TO 11 U.S.C. §§ 105, 1142 AND 1143

Joseph A. Pardo, as successor trustee (the "Trustee") of the FPA Creditor Trust (the "Trust"), by and through his co-counsel, The Bayard Firm and Riker, Danzig, Scherer, Hyland & Perretti LLP, hereby moves for entry of an order approving mechanics of distributions to unsecured creditors, including (i) approval of a de minimis distribution threshold amount and (ii) substantive consolidation of the Debtors' estates for distribution purposes, pursuant to 11 U.S.C. §§ 105, 1142 and 1143 (the "Motion"), and in support thereof respectfully states as follows:

### Jurisdiction

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

# FACTS

## A. Background

2. On July 19, 1998 and various dates thereafter, through and including August 7, 1998 (the "Petition Dates"), FPA Medical Management, Inc. ("FPA") and certain of its subsidiaries and affiliates (collectively, the "Subsidiaries and, together with FPA, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code").[1]

3. On August 3, 1998, the Office of the United States Trustee appointed an official committee of unsecured creditors for the Debtors.

4. When the Debtors filed their bankruptcy cases, the Debtors were a national physician practice management company which acquired, organized and managed primary care physician practices that contract with health insurance plans. The Debtors also provided primary and specialty care services to capitated managed care enrollees and fee-for-service patients and physician management services to hospital emergency departments, urgent care and radiology facilities.

5. On May 27, 1999, the Court entered its Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 (the "Confirmation Order") Confirming the Debtors' Modified Second Amended Joint Plan of Reorganization of FPA Medical Management, Inc. and Certain of its Subsidiaries and Affiliates (the "Plan").

---

[1] A list of the Debtors and their respective case numbers is annexed as Exhibit A.

6. On July 8, 1999 (the "Effective Date"), all of the conditions precedent to the consummation of the Plan were satisfied and the Plan became effective.

7. Pursuant to the Plan and the Confirmation Order, on the Effective Date, the Debtors sold all of their remaining business and assets in two separate transactions, one with Coastal Physician Group, Inc. (which later became PhyAmerica Physician Group, Inc.) and Stoneybrook Capital, LLC, and the other with Humana Inc.

**B. Merger of Subsidiaries into FPA**

8. Section 7.2 of the Plan provides:

> On the Effective Date or as soon thereafter as practicable, (i) the members of the Board of Directors of each of the Debtors shall be deemed to have resigned, (ii) each of the Subsidiaries shall be merged with and into FPA (unless the Purchasers elect to acquire the stock of such subsidiary), and (iii) the Chapter 11 Cases of the Subsidiaries shall be closed, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Case or of any Subsidiary shall be brought or otherwise commenced in FPA's Chapter 11 Case.

**C. The Trust and the Trustee**

9. Pursuant to Section 11.3 of the Plan, on the Effective Date, the Trust was created and established for the purposes of (i) liquidating Trust assets, (ii) resolving the allowance of general unsecured claims, which were classified as Class 4 claims under the Plan, and (iii) making distributions to holders of allowed general unsecured claims from Trust assets.

10. Upon the Effective Date, the FPA Creditor Trust Agreement (the "Trust Agreement"), which was attached to the Plan as Exhibit D, became

effective.

11. B.N. Bahadur was initially appointed as trustee of the Trust. However, on July 19, 1999, Mr. Bahadur resigned. Effective July 20, 1999, the Trustee was appointed successor trustee of the Trust.

**D.   The Trust's Assets**

12. Pursuant to Section 11.2 of the Plan, the assets transferred to the Trust on the Effective Date included the following: (i) "Avoidance Claims," which are defined in Section 1.9 of the Plan as all causes of action "arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under similar state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Claims"; (ii) "D&O Claims," which are defined in Section 1.37 of the Plan as "claims or Causes of Action that may be brought by the Debtors or derivatively in the name of the Debtors against any present or former director or officer of any Debtor, except to the extent released [in the Plan] . . ."; and (iii) the "Initial Deposit," which is defined in Section 1.69 of the Plan as $2,050,000 in cash.

13. In addition, pursuant to Section 11.2 of the Plan, the Debtors assigned to the Trust all rights to pursue objections, defenses or counterclaims to Class 4 general unsecured claims and all defenses and setoff rights with respect to rejected executory contracts and leases.

E. **The Unsecured Claims Resolution Process**

14. Section 9.8 of the Plan provides that the Trustee, on behalf of the Trust, would be responsible for "administering, disputing, objecting to, compromising or otherwise resolving and making distributions on account of" general unsecured claims and Trust Claims (as defined in the Plan).

15. During the course of this case, over 22,600 proofs of claim were filed against the Debtors' estates, with stated claim amounts of over $3.44 billion. To date, there have been twenty-nine (29) omnibus claims objections filed in the Debtors' cases and general unsecured claims have been reduced to below $600 million. The Trustee is in the process of further reviewing the remaining general unsecured proofs of claim and anticipates filing one or more additional omnibus objections to finalize the claims, including objections to numerous unliquidated, contingent and other claims.[2]

F. **The Avoidance Actions**

16. Since his appointment in July 2000, the Trustee has pursued and settled hundreds of avoidance actions, many without formally filing adversary proceedings with the Court. In particular, the Trustee has filed with the Court approximately one hundred forty-five (145) separate adversary proceedings to avoid and recover fraudulent and/or preferential transfers, to recover improper withholds, setoffs and/or reductions from capitation, to recover funds as a result of improper conduct by the Debtors' former directors and officers and to recover

---

[2] By Order dated June 18, 2007, the Court extended the Trustee's time to pursue further objections to unsecured claims to October 10, 2007.

other payments otherwise due to the Debtors.

17. During the course of the Trustee's pursuit of avoidance actions, the Trustee discovered that the Debtors' business records were, in many instances, incomplete and disorganized. The Trustee further discovered that the Debtors' records reflected that prior to the Petition Dates, there was a scrambling and overlapping of assets, liabilities and payments to creditors by the various Debtors.

G. **Distribution Procedures**

18. The Trustee has liquidated virtually all the Trust's assets and, as noted, is in the final stages of objecting to general unsecured claims. As a result, the Trustee is preparing to make from the Trust assets the first distributions under the Plan to holders of general unsecured claims, designated as Allowed Class 4 Unsecured Claims under the Plan. The Plan, however, does not establish a threshold amount for de minimis distributions nor does it adequately provide a mechanism for complying with tax withholding regulations for distributions to general unsecured creditors.

19. Pursuant to Section 15.3 of the Plan, the Debtors are required to comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions under the Plan are subject to any such withholding and reporting requirements.

**RELIEF REQUESTED**

20. In order to make distributions to general unsecured creditors, the Trustee respectfully requests that the Court enter the accompanying Order: (i)

requiring holders of Allowed Class 4 Unsecured Claims to execute and return a W-8 or W-9 tax form, as applicable, to the Trustee in order to participate in distributions under the Plan, (ii) establishing a threshold amount of $25.00 for de minimis distributions to be paid under the Plan, and (iii) substantively consolidating the Debtors' estates for distribution purposes.

### I. Requiring Holders of Allowed Unsecured Claims to Execute and Return W-8 or W-9 Forms, as Applicable, to the Trustee to Participate in Distributions

21. Under the Internal Revenue Code, the Trustee may potentially be subject to personal liability to the extent that he makes distributions to holders of Allowed Class 4 Unsecured Claims without withholding taxes. I.R.C. § 3406(h)(10).

22. Given the large number of claims in this bankruptcy case, it would be difficult, time-consuming and expensive for the Trustee to undertake the responsibility of withholding taxes from distributions. As a result, to comply with all withholding requirements imposed by the federal government, the Trustee requests that the Court require all holders of Allowed Class 4 Unsecured Claims as a prerequisite to participate in distributions from the Trust to execute and return to the Trustee a completed W-8 or W-9 tax form, as applicable, which would provide tax identification numbers for reporting to the Internal Revenue Service.

23. Pursuant to section 1143 of the Bankruptcy Code, a plan may require the performance of an act as a condition to participation in distributions under a plan. 11 U.S.C. § 1143. Furthermore, if the time for performance of the

act passes, the unclaimed property reverts back to the debtor or entity acquiring the assets of the debtor under the plan.

24. Here, although Section 15.3 of the Plan provides that distributions shall be subject to federal and state taxing authority withholding and reporting requirements, the Plan does not expressly provide a mechanism for compliance. Requiring unsecured creditors to execute and return to the Trustee W-8 or W-9 tax forms, as applicable, will provide the Trustee with the requisite information to report taxable distributions from the Trust and relieve the Trustee of the obligation under federal tax law to withhold taxes from distributions.

25. In particular, the Trustee proposes to mail each holder of an Allowed Class 4 Unsecured Claim, at the address listed in proofs of claim or any notice of address change filed by a claimant, a W-8 and W-9 form, along with a Notice, a copy of which is annexed as Exhibit B, stating that only those creditors who execute a W-8 or W-9 form, as applicable, and return the executed form to the Trustee by October 21, 2007 will be entitled to participate in distributions from the Trust. The Trustee respectfully requests that the Court approve this procedure and the form of Notice attached hereto as Exhibit B. This procedure will substantially simplify the distribution process and save significant administrative costs associated with withholding taxes from distributions.

## II. Establishing Amount of De Minimis Distributions

26. Given the fact that the Plan does not include a de minimis threshold for distributions, the Trustee also requests that the Court establish a de minimis threshold for distributions by the Trustee to holders of Allowed Class 4

Unsecured Claims. Specifically, the Trustee requests that if the total distribution to any holder of an Allowed Class 4 Unsecured Claim is less than $25.00, the Trustee not be required to make the distribution. Instead, the Trustee requests that any de minimis distribution under $25.00 would revert back to the Trust and be distributed to other holders of Allowed Class 4 Unsecured Claims under the Plan.

27. Bankruptcy courts, including those in this district, have approved $25.00 as a de minimis distribution threshold in Chapter 11 cases. See e.g. In re KB Toys, Inc., Case No. 04-10120 (Bankr. Del.) (Debtor's First Amended Joint Plan of Reorganization Proposed by the Debtors and the Official Committee of Unsecured Creditors Under Chapter 11 of the Bankruptcy Code dated as of July 14, 2005 at p. 51); In re Onco Investment Company, Case No. 04-10558 (Bankr. Del.) (Second Amended Joint Plan of Reorganization of Debtors and Debtors in Possession dated July 30, 2004 at p. 26); In re First City Bancorporation of Texas, Inc., 1995 WL 710917 p. 53 (Bankr. N.D. Tex. 1995).

### III. Substantive Consolidation of the Debtors' Estates for Distribution Purposes.

28. Finally, the Trustee requests that the Court enter an order substantively consolidating the Debtors' estates for distribution purposes to holders of Allowed Class 4 Unsecured Claims.

29. The Trustee submits that substantive consolidation of the Debtors' estates for distribution purposes is necessary due to the fact that it would be virtually impossible for the Trustee to segregate Trust assets on a debtor-by-debtor basis in order to make distributions. Further, this would be consistent

with the provisions of Section 7.2 of the Plan. Indeed, the administrative complexity and costs associated with attempting to unscramble the Trust's assets in order to make distributions, if at all even possible, would be prohibitive.

30. Substantive consolidation is permitted when "postpetition [the debtors] assets and liabilities are so scrambled that separating them is prohibitive and hurts all creditors." In re Owens Corning, 419 F.3d 195, 211 (3d Cir. 2005). The Third Circuit explained that the rationale for postpetition consolidation is "practicality"-- when the assets and liabilities have become hopelessly commingled and without substantive consolidation all creditors will be worse off because they cannot be segregated or, if so, only at great expense. See id. at p. 211 n. 20.

31. Since the Owens Corning decision, this Court has confirmed plans providing for substantive consolidation for distribution purposes. See, e.g., In re Kaiser Aluminum Corporation, 2006 WL 616243 (Bankr. D. Del. 2006).

32. During this case, the Trustee has pursued and settled hundreds of avoidance actions. In many instances, it would be virtually impossible for the Trustee to determine to which estate a particular recovery should be allocated. As a practical matter, the Trustee respectfully submits that the Trust's assets could not have been separated practicably post-confirmation.

33. Given the fact that (i) the Trustee has obtained hundreds of separate recoveries since his appointment, (ii) the Debtors' books and records were in such a state so as to make it virtually impossible for the Trustee to allocate recoveries to a particular Debtor, (iii) the number of proofs of claim in

theses cases are extensive, (iv) post-confirmation Section 7.2 of the Plan collapsed each subsidiary of FPA into FPA and caused the post-confirmation administration of the Plan to occur solely in the case of FPA, (v) the "Initial Deposit" that funded the Plan did not necessarily derive from one Debtor and (vi) all of the Trust's assets were hopelessly commingled and scrambled, the Trustee submits that it is in the best interests of all creditors that the Debtors' estates be substantively consolidated for distribution purposes to Allowed Class 4 Unsecured Claims.

## NOTICE

34. Notice of this Motion has been provided to (a) the U.S. Trustee, (b) all parties requesting notices pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure and (c) all known creditors with existing claims.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Court enter the accompanying order approving mechanics of distributions to unsecured creditors, including (i) allowing the Trustee to require creditors to execute W-8 or W-9 forms, as applicable, to participate in distributions, (ii) approving a $25.00 de minimis threshold amount for distributions, (iii) substantively consolidating the Debtors' estates for distribution purposes, and (v) granting such other and further relief as the Court deems just and proper.

Date: July 24, 2007

THE BAYARD FIRM

/s/ _____
Neil B. Glassman (No. 2087)
Ashley B. Stitzer (No. 3891)
Kathryn D. Sallie (No. 4600)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000

- and -

RIKER, DANZIG, SCHERER, HYLAND
 & PERRETTI LLP
Dennis J. O'Grady (N.J. Bar No. DO-7430)
Joseph L. Schwartz, Esq. (N.J. Bar No. JS-5525)
Headquarters Plaza
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

Attorneys for Joseph A. Pardo, Successor Trustee of the Creditor Trust