# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>APF Co., et al.<br><br>Debtors. | Chapter 11<br>Case No. 98-1596 (PJW)<br>Jointly Administered<br><br>**Objection Deadline: 2/5/09 @ 5:00 p.m. (Eastern)**<br>**Hearing Date: 2/12/09 @ 3:00 p.m. (Eastern)** |

## PLAN ADMINISTRATOR'S MOTION FOR FINAL DECREE AND ORDER CLOSING ALL BUT THREE OF THE CHAPTER 11 CASES

Howard J. Ettelman, the successor Plan Administrator (the "Plan Administrator") for APF Co., successor in interest by name change to Reorganized FPA ("APF"),[1] hereby submits this motion (the "Motion") for a final decree and order, pursuant to 11 U.S.C. § 105(a), Rule 3020(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5009-1(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Plan and the Confirmation Order, closing all of the above-captioned jointly administered bankruptcy cases (the "Chapter 11 Cases") other than the cases of (1) APF, Case No. 98-1596 (PJW), (2) Mid-Town Management, Inc. ("GMTM"), Case No. 98-1644(PJW), and (3) Virginia Medical Associates, P.C. ("VMA"), Case No. 98-1840 (PJW) (the three cases

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Confirmation Order and the Plan (each as defined herein).

collectively, the "Remaining Cases"). In support of this Motion, the Plan Administrator respectfully represents as follows:

## INTRODUCTION

The Plan Administrator seeks to close those all of the Chapter 11 Cases other than the Remaining Cases because, as explained in more detail herein, (a) all of the Chapter 11 Cases of APF's subsidiaries, other than the cases of GMTM and VMA, should have been closed automatically pursuant to operation of the Plan and the Confirmation Order on the Effective Date (defined below) or shortly thereafter, and (b) closing and/or confirming that such cases are indeed closed is a condition to a settlement between APF and the United States Trustee and will otherwise help avoid any further confusion regarding the status of such cases over the remaining few months of these cases.

## BACKGROUND

### A. Chapter 11 Cases

1. On July 19, 1998, and various dates thereafter, through and including August 7, 1998 (the "Petition Dates"), FPA Medical Management, Inc. "FPA") and those of its subsidiaries and affiliates that are debtors in the Chapter 11 Cases (collectively, the "Subsidiaries" and, together with FPA, the "Debtors") each filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 et seq. (as amended, the "Bankruptcy

Code").[2] The Court subsequently entered an Order Directing Joint Administration of the Chapter 11 Cases Pursuant to Bankruptcy Rule 1015(b).

2. When the Chapter 11 Cases were commenced, the Debtors were a national physician practice management company which acquired, organized and managed primary care physician practices that contracted with health insurance plans. The Debtors also provided primary and specialty care services to capitated managed care enrollees and fee-for-service patients and physician management services to hospital emergency departments, urgent care and radiology facilities.

**B.  Plan and Confirmation Order**

3. On May 26, 1999, the Court entered its Findings of Fact, Conclusions of Law and Order (the "Confirmation Order") Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Modified Second Amended Joint Plan of Reorganization of FPA Medical Management, Inc. and Certain of Its Subsidiaries and Affiliates (the "Plan").[3] On July 8, 1999 (the "Effective Date"), all of the conditions precedent to the consummation of the Plan were satisfied and the Plan became effective.

---

[2]  A list of Debtors and their respective case numbers is attached hereto as Exhibit A.

[3]  Any discussion herein of the Plan and the provisions thereof is qualified in its entirety by the actual provisions of the Plan

3

4. Pursuant to the Plan and the Confirmation Order, on the Effective Date, the Debtors sold substantially all of their remaining businesses and assets in two separate transactions, one with Coastal Physician Group, Inc. (which later became PhyAmerica Physician Group, Inc.) and Stoneybrook Capital, LLC (the "Coastal Transaction"), and the other with Human Inc. (the "Humana Transaction").

C. **Plan Administrator and Successor Plan Administrator**

5. The Plan and the Confirmation Order provide for a Plan Administrator to be the sole officer and director of APF and to exercise the rights, powers and duties of APF necessary to carry out APF's responsibilities under the Plan and to take any and all actions necessary to implement the Plan, including among other things, (a) liquidating the Debtors' assets that were not sold in the Coastal and Humana Transactions or transferred to the FPA Creditor Trust pursuant to the Plan, (b) administering, disputing, objecting to, compromising or otherwise resolving Priority Claims asserted against the Debtors,[4] (c) distributing the payments provided in the Plan for the holders of Allowed Priority Claims and (d) ultimately dissolving APF.

6. Pursuant to Section 7.7 of the Plan, on the Effective Date, James A. Lebovitz was appointed as Plan Administrator (as defined in the Plan). On July 3,

---

[4] Priority Claims are defined in Section 1.96 of the Plan to mean Administrative Claims, Priority Tax Claims, Other Priority Claims and Miscellaneous Secured Claims.

4

2001, the Court entered an Order (a) approving the resignation of Mr. Lebovitz as Plan Administrator effective as of July 3, 2001, (b) appointing Mr. Ettelman as the successor Plan Administrator to succeed Mr. Lebovitz effective as of July 4, 2001, and (c) vesting in Mr. Ettelman all of the rights, obligations and powers of the Plan Administrator under the Plan and the Confirmation Order, including the authority to act on behalf of APF.

7. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Court also retains jurisdiction to resolve matters relating to the Plan pursuant to Article XIV thereof and paragraph 32 of the Confirmation Order.

8. The predicates for the relief requested herein are Bankruptcy Code section 105(a), Bankruptcy Rule 3020(d), Local Rule 5009-1(a), the Plan and the Confirmation Order.

**RELIEF REQUESTED**

9. By this Motion, the Plan Administrator requests that the Court issue and enter a final decree and order, substantially in the form attached hereto as Exhibit B (the "Proposed Final Decree and Order"), closing all of the Chapter 11 Cases other than cases of APF, GMTM and VMA.

## BASIS FOR RELIEF

10. Section 7.2 of the Plan, entitled "Merger of Subsidiaries into FPA," provides that:

> On the Effective Date or as soon thereafter as practicable, (i) the members of the board of directors of each of the Debtors shall be deemed to have resigned, (ii) each of the Subsidiaries shall be merged with and into FPA (unless the Purchasers elect to acquire the stock of such subsidiary), and (iii) the Chapter 11 Cases of the Subsidiaries shall be closed, following which any and all proceedings that could have been brought or otherwise commenced in the Chapter 11 Case of any Subsidiary shall be brought or otherwise commenced in FPA's Chapter 11 Case.[5]

Accordingly, pursuant to Sections 7.2(ii) and 7.9 of the Plan,[6] (a) all of the Subsidiaries (other than GMTM and VMA, which were neither proponents of nor included in the Plan) merged with and into APF effective as of the Effective Date, and (b) the Chapter 11 Cases of the Subsidiaries, other than GMTM and VMA, should have been closed on the Effective Date or as soon thereafter as practicable. It appears that the Chapter 11 Cases of the Subsidiaries were not closed on or after the Effective Date and remain open today.

---

[5] Section 7.9 of the Plan, entitled "Corporate Action," provides that "[e]ach of the matters provided for under the Plan involving the corporate structure of any Debtor or corporate action to be taken by or required of any Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders or directors of any of the Debtors."

[6] None of the Purchasers elected to acquire the stock of any Subsidiaries.

11. The Plan Administrator and the United States Trustee (the "U.S. Trustee") recognized that the Subsidiaries Chapter 11 Cases were not closed and have negotiated a settlement that resolves potential disputes regarding quarterly fees under 28 U.S.C. § 1930 with respect to the Subsidiaries' Chapter 11 Cases after the Effective Date. Pursuant to their settlement, APF and the U.S. Trustee have agreed that, among other things, (a) APF, GMTM and VMA owe quarterly fees with respect to their respective Chapter 11 Cases from and after the Effective Date through the date the Court closes such cases, (b) the Subsidiaries do not owe quarterly fees after the Effective Date; provided that the Plan Administrator seeks the relief requested herein (i.e., requests the Court to close the Subsidiaries' Chapter 11 Cases), and (c) the U.S. Trustee shall support the Plan Administrator's request to close the Subsidiaries's Chapter 11 Cases.

12. Accordingly, by this Motion, the Plan Administrator is seeking to close all of the Subsidiaries' Chapter 11 Cases, other than the Chapter 11 Cases of GMTM and VMA.

**APPLICABLE AUTHORITY**

13. Local Rule 5009-1(a) provides that "a party in interest may seek the entry of a final decree at any time after the confirmed plan has been substantially consummated provided that all required fees due under 28 U.S.C. § 1930 have been paid." Further, section 105 of the Bankruptcy Code provides, in relevant part, that

7

"[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

14. Similarly, Article XIV of the Plan provides that the Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Debtors' cases and the Plan, including, among other things, "to issue orders in aid of execution, implementation or consummation of the Plan, or as may otherwise be required to enforce or give effect to the Plan," "to enter a final decree closing the Chapter 11 Cases," and "to enforce all orders previously entered by the Bankruptcy Court."

15. Courts have specifically, and consistently, held that a bankruptcy court retains jurisdiction to enforce its confirmation order. See, e.g., North American Car Corp. v. Peerless Weighing & Vending Machine Corp., 143 F.2d 938, 940 (2d Cir. 1944) ("We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interferences with the execution of the plan, and otherwise aid in its operation"); In re Continental Airlines, Inc., 236 B.R. 318, 326 (Bankr. D. Del. 1999) (bankruptcy court has inherent jurisdiction to enforce its confirmation order); Walnut Associates v. Saidel, 164 B.R. 487, 492 (E.D. Pa. 1994) (bankruptcy court retains jurisdiction over post-confirmation administration of estate until the final decree is entered).

16. Furthermore, Rule 3020(d) of the Federal Rules of Bankruptcy Procedure states "Notwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Fed. R. Bankr. P. 3020(d).

17. Accordingly, the Court has jurisdiction and authority to enforce the Confirmation Order, and the Plan it confirmed, by issuing and entering the Proposed Final Decree and Order closing the Chapter 11 Cases other than the Remaining Cases.

18. The Subsidiaries' Chapter 11 Cases, other than GMTM and VMA should have been closed automatically on the Effective Date pursuant to operation of the Plan and the Confirmation Order. By closing all of the Chapter 11 Cases, other than the Remaining Cases, the Court and the U.S. Trustee will not have to expend resources administering or monitoring unnecessary cases in which there is no activity, there will be no potential for confusion among the Debtors, the U.S. Trustee or any other party in interest regarding the status of the Subsidiaries' Chapter 11 Cases, and APF can avoid the potential of incurring further quarterly fees under 28 U.S.C. § 1930 except with respect to APF, GMTM and VMA.[7]

---

[7] See In re A.H. Robins Co., Inc., 219 B.R. 145, 149 (Bankr. E.D. Va. 1998) (the bankruptcy court found that "the obligation to pay UST fees terminates upon closure, dismissal, or conversion of a Chapter 11 case, and will not be paid ad infinitum.").

9

WHEREFORE, the Plan Administrator respectfully requests that the Court issue and enter the Proposed Final Decree and Order closing the Chapter 11 Cases other than the cases of APF, GMTM and VMA, and grant such other and further relief as is just.

Dated: Wilmington, Delaware
January 23, 2009

John Wm. Butler, Jr.
Stephen D. Williamson
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

- and -

/s/ Jason M. Liberi
Gregg M. Galardi (I.D. No. 2991)
Jason M. Liberi (I.D. No. 4425)
SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
(302) 651-3000

Attorneys for the Plan Administrator