IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>APF Co., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 98-1596 (PJW)<br><br>Jointly Administered<br><br>**Objection Deadline: May 14, 2009 at 4:00 p.m.**<br>**Hearing Date: May 21, 2009 at 10:30 a.m.** |

## MOTION TO ESTIMATE CLAIMS
## PURSUANT TO 11 U.S.C. §§ 502(c) and 105(a)

Joseph A. Pardo, as successor trustee (the "Trustee") of the Creditor Trust (defined below), by and through his undersigned counsel, hereby moves pursuant to 11 U.S.C. §§ 502(c) and 105(a) for an order estimating certain claims (the "Motion"). In support of the Motion, the Trustee submits the Declaration of Brad Daniel of BMC Group, Inc. (the "Daniel Declaration"), attached hereto as Exhibit B and incorporated herein by reference, and respectfully represents as follows:

### BACKGROUND

1. On July 19, 1998 and on various dates thereafter, through and including August 7, 1998 (as to each debtor, the "Petition Date"), FPA Medical Management, Inc. and certain of its subsidiaries and affiliated professional corporations (the "Debtors") filed with this Court their respective voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code.

2. On August 3, 1998, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

3. When the cases commenced, the Debtors were a national physician practice management company which acquired, organized and managed primary care physician

practices that contract with health insurance plans. The Debtors also provided primary and specialty care services to capitated managed care enrollees and fee-for-service patients and physician management services to hospital emergency departments, urgent care, and radiology facilities.

4. On May 27, 1999, this Court entered an order confirming the Debtors' Modified Second Amended Joint Plan of Reorganization of FPA Medical Management, Inc. and Certain of Its Subsidiaries and Affiliates (the "Plan"). The effective date of the Plan was July 8, 1999 (the "Effective Date").

5. The Plan provided, *inter alia*, for the creation of the Creditor Trust (as defined under the Plan). The Creditor Trust was formed as a vehicle for conducting claims administration and making distributions regarding Class 4 general unsecured claims. Pursuant to Section 11.2 of the Plan, the Creditor Trust was assigned rights and duties with respect to Class 4 general unsecured claims including, without limitation, the right to interpose claim objections, defenses and/or counterclaims to such claims.[1] Under the Plan, to the extent an unsecured claim is allowed, the holder of such claim is a beneficiary of the Creditor Trust and is eligible to receive a pro rata share of any distribution therefrom.

6. B.N. Bahadur was appointed as initial trustee of the Creditor Trust. On July 19, 1999, he resigned. Effective July 20, 1999, Joseph A. Pardo was appointed successor Trustee.

7. On September 30, 1998, the Court entered an order setting November 17, 1998, at 4:00 p.m. as the deadline for filing certain proofs of claim in these chapter 11 cases (the "Bar Date").

---

[1] Any discussion of the Plan, including without limitation, its provisions relating to the Creditor Trust, is qualified in its entirety by the actual provisions of the Plan.

8. Notice of the Bar Date, in the form approved by the Court, was: (a) mailed to all known creditors or potential creditors of the Debtors; (b) published in the national edition of each of The New York Times (on October 16, 1998), USA Today (on October 14, 1998), and The Wall Street Journal (on October 15, 1998); (c) published in the Sunday, October 25, 1998 edition of each of The Arizona Republic, The Charlotte Observer, The Dallas Morning News, The Houston Chronicle, The Las Vegas Review Journal, The Las Vegas Review Sun, The Los Angeles Times, The Miami Herald, The Sacramento Bee, The San Antonio Express, The San Diego Union Tribune, The Tucson Star, and The Tucson Citizen; (d) published in the October 29, 1998 edition of The Charlotte Business Journal; and (e) published in the November 2, 1998 edition of Modern Healthcare.

9. To date, over 21,000 proofs of claim have been filed against the Debtors in these cases.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 502(c) and 105(a).

## REQUEST FOR RELIEF

11. By this Motion, the Trustee respectfully requests the Court to estimate for distribution purposes each of the claims listed on Exhibit A attached hereto, to the extent that each claim is asserted as a general unsecured claim, pursuant to section 502(c) of the Bankruptcy Code.

12. Section 502(c)(1) of the Bankruptcy Code provides:

> (c) There shall be estimated for purpose of allowance under this section-
>
> (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case.

11 U.S.C. § 502(c) (2006). See 4 Collier on Bankruptcy ¶502.04 quoting H.R. No. 595, 95th Cong., 1st Sess. 354 (1977), Rep. 989, 95th Cong., 2d Sess. 65 (1978) ("The essence of section 502(c) is that 'all claims against the debtor be converted into dollar amounts'").

13. In enacting the Bankruptcy Code, Congress intended that all claims, including unliquidated and contingent claims, be "dealt with" in the bankruptcy proceeding. See In re Brints Cotton Marketing, Inc., 737 F.2d 1338, 1340 (5th Cir. 1984) (citing S. Rep. No. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5808) (court reiterated that in enacting the Bankruptcy Code, Congress intended that "all claims against the debtor be converted into dollar amounts"). Id. Therefore, the Bankruptcy Code provides that a claim which is "contingent or unliquidated" shall be "estimated," if the "fixing or liquidation of [the claim] . . . would unduly delay the closing of the case." Id. at 1340-41; 11 U.S.C. § 502 (c)(1).

14. Section 502(c)(1) of the Bankruptcy Code serves two purposes – first, it avoids the need to wait for the resolution of pending lawsuits to determine issues of liability or amounts owed by means of anticipating and estimating the likely outcome of these actions and, second, it promotes a fair distribution to creditors through a realistic assessment of uncertain claims. See In re Ford, 967 F.2d 1047, 1053 (5th Cir. 1992).

15. In order to estimate a claim, the bankruptcy court should use "whatever method is best suited to the circumstances." Id. at 1341. Section 105(a) of the Bankruptcy

Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

16. The Trustee and his professionals have worked diligently in reviewing the claims asserted against the estates. Some claims required time-consuming evaluation due to the insufficiency or the poor quality of the supporting documentation.

17. The claims listed in Exhibit A attached hereto are properly valued at the amount set forth in the column entitled "Modified Claim Amount" on Exhibit A. These claims are supported by either no documentation or by some documentation that is incomplete or completely or partially legible. The Trustee also represents that the creditors have had ample time to amend or liquidate their claims and/or provide adequate documentation in support thereof. Given the evidence of the validity of the claims, the Trustee seeks to value them at the amount supported by legible documentation. Therefore, the claims, to the extent that each claim is asserted as a general unsecured claim, should be estimated at an amount certain as indicated on Exhibit A, reflecting the portion of the claim in which sufficient evidentiary support has been provided.

## **NOTICE**

18. Notice of this Motion has been provided to the Office of the United States Trustee, each of the claimants listed on Exhibit A attached hereto, and each person requesting notices in these cases pursuant to the Supplemental Order under Fed. R. Bank. P. 2002(m) and 9007 dated October 18, 1999 relating to service of pleadings in these cases. The Trustee submits that no other or further notice is necessary.

{BAY:01268203v1}

WHEREFORE, the Trustee respectfully requests that the Court enter an order estimating the claims as provided on Exhibit A hereto and granting such other and further relief that this Court deems just and proper.

Dated: March 18, 2009

BAYARD, P.A.

By: /s/ Daniel O'Brien
Neil B. Glassman (No. 2087)
Ashley B. Stitzer (No. 3891)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

- and -

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz (N.J. Bar No. JS-5525)
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

Counsel for Joseph A. Pardo, Successor Trustee of the FPA Creditor Trust

{BAY:01268203v1}