# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>APF Co., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 98-1596 (PJW)<br><br>Jointly Administered<br><br>Objection Deadline: July 20, 2009 at 4:00 p.m.<br>Hearing Date: July 27, 2009 at 10:00 a.m. |

## MOTION OF JOSEPH A. PARDO, TRUSTEE OF THE FPA CREDITOR TRUST, FOR AN ORDER FURTHER EXTENDING THE TERM OF THE FPA CREDITOR TRUST

Joseph A. Pardo, as successor trustee (the "Trustee") of the FPA Creditor Trust (the "Trust"), by and through his undersigned counsel, hereby moves for entry of an order further extending the term of the Trust until November 13, 2009, in order to, *inter alia*, resolve the last remaining objections to unsecured claims, make distributions to unsecured creditors and close this bankruptcy case, and in support thereof respectfully states as follows:

## JURISDICTION

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

## FACTS

**A.** **Background**

2. On July 19, 1998 and various dates thereafter, FPA Medical Management, Inc. and certain of its subsidiaries and affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended (the "Bankruptcy Code").

3. On August 3, 1998, the Office of the United States Trustee appointed an official committee of unsecured creditors for the Debtors.

4. When the Debtors filed their bankruptcy cases, the Debtors were a national physician practice management company which acquired, organized and managed primary care physician practices that contract with health insurance plans. The Debtors also provided primary and specialty care services to capitated managed care enrollees and fee-for-service patients and physician management services to hospital emergency departments, urgent care and radiology facilities.

5. On May 27, 1999, the Court entered its Findings of Fact, Conclusions of Law and Order Under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 (the "Confirmation Order') confirming the Debtors' Modified Second Amended Joint Plan of Reorganization of FPA Medical Management, Inc. and Certain of its Subsidiaries and Affiliates (the "Plan").

6. On July 8, 1999 (the "Effective Date"), all of the conditions precedent to the consummation of the Plan were satisfied and the Plan became effective.

7. Pursuant to the Plan and the Confirmation Order, on the Effective Date, the Debtors sold all of their remaining businesses and assets in two separate transactions, one with Coastal Physician Group, Inc. (which later became PhyAmerica Physician Group, Inc.) and Stoneybrook Capital, LLC, and the other with Humana Inc.

B.  **The Trust**

8. The Plan provided for, *inter alia*, the creation of the Trust for the purposes of (i) liquidating Trust assets, (ii) resolving the allowance of general unsecured claims, which were classified as Class 4 claims under the Plan, and (iii) making distributions to holders of allowed general unsecured claims from Trust assets. Pursuant to the FPA Creditor Trust Agreement (the "Trust Agreement"), which was submitted to the Court as exhibit D to the Plan, the Trust was deemed created and effective on the Effective Date. A true copy of the Trust Agreement is annexed as Exhibit "A".

9. B.N. Bahadur was initially appointed as trustee of the Trust. However, on July 19, 1999, Mr. Bahadur resigned. Effective July 20, 1999, the Trustee was appointed successor trustee of the Trust and continues as trustee to the present.

10. Section 5.4 of the Plan provided that with respect to holders of Class 4 general unsecured claims, on the Effective Date, the Trust would receive certain assets on behalf of allowed Class 4 claims in full satisfaction of those claims, which assets the Trustee would at some point distribute to Class 4 general unsecured creditors on a pro rata basis.

C.  **The Reorganized Debtors and the Plan Administrator**

11. Pursuant to Section 7.7 of the Plan, as of the Effective Date, James A. Lebovitz was appointed as the Plan Administrator for the Reorganized Debtors (each as defined in the Plan) to administer those rights, powers and duties that were not assigned to the Trustee and to carry out the Reorganized Debtors' responsibilities under the Plan.

12. Pursuant to Section 1.108 of the Plan, the Reorganized Debtors received the "Retained Assets," which included "Rights of Action."

13. Pursuant to Section 7.7 of Plan, among the Plan Administrator's obligations was the obligation to make distributions to allowed holders of administrative claims, priority claims and secured claims.

14. In 2001, Mr. Lebovitz resigned as Plan Administrator. By Order dated July 2, 2001, the Court approved the appointment of Howard Ettelman as successor Plan Administrator under the Plan, effective as of July 4, 2001.

### D. The Trust's Assets

15. Pursuant to Section 11.2 of the Plan, the assets transferred to the Trust on the Effective Date included the following: (i) "Avoidance Claims," which were defined in Section 1.9 of the Plan as all causes of action "arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under similar state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Claims"; (ii) "D&O Claims," which were defined in Section 1.37 of the Plan as "claims or Causes of Action that may be brought by the Debtors or derivatively in the name of the Debtors against any present or former director or officer of any Debtor, except to the extent released [in the Plan] . . ."; and (iii) the "Initial Deposit," which was defined in Section 1.69 of the Plan as $2,050,000 in cash.

16. In addition, pursuant to Section 11.2 of the Plan, the Debtors assigned to the Trust all rights to pursue objections, defenses or counterclaims to Class 4 general unsecured claims and all defenses and setoff rights with respect to rejected executory contracts and leases.

### E. The Unsecured Claims Resolution Process

17. Section 9.8 of the Plan provided that the Trustee, on behalf of the Trust, would be responsible for "administering, disputing, objecting to, compromising or otherwise resolving and making distributions on account of" general unsecured claims and Trust Claims (as defined in the Plan).

18. During the course of this case, over 22,687 proofs of claim were filed against the Debtors' estates, with stated claim amounts of over $3.44 billion. To date, there have been forty-seven (47) omnibus claims objections filed in the Debtors' cases that have resulted in general unsecured claims having been reduced to below $400 million. The Trustee and his professionals believe that the review process with respect to general unsecured claims has been virtually completed, although the Trustee is completing a final review of unsecured claims to determine whether any further claims objections are warranted.[1]

19. By Order dated August 30, 2007, the Court granted the Trustee's motion to approve mechanics of distributions to unsecured creditors, which motion also included requests (i) to approve de minimis distribution threshold amounts and (ii) to approve a substantive consolidation of the Debtors' estates for distribution purposes. Pursuant to that Order, the Trustee was authorized to circulate W-8 and W-9 tax forms to unsecured creditors, along with a notice advising creditors that completed tax forms had to be returned to the Trustee by a certain date in order for unsecured creditors to

---

[1] On May 28, 2009, the Trustee filed the Motion for Further Extension of Time to Object to Allowance of Claims seeking a further extension of time in which the Trustee may object to the allowance of claims through and including August 15, 2009. The motion is scheduled for hearing on June 30, 2009, and a certification of no objection was filed with respect to the motion on June 24, 2009.

receive distributions from the Trust. As a result of this process, unsecured claims have been further reduced.

### F. The Avoidance Actions

20. Since his appointment in July 2000, the Trustee has pursued and settled hundreds of avoidance actions, many without formally filing adversary proceedings with the Court. In particular, the Trustee has filed with the Court approximately one hundred forty-five (145) separate adversary proceedings to avoid and recover fraudulent and/or preferential transfers, to recover improper withholds, setoffs and/or reductions from capitation, to recover funds as a result of improper conduct by the Debtors' former directors and officers and to recover other payments otherwise due to the Debtors.

21. The Trustee has now resolved all 145 lawsuits that he instituted. Further, the Trustee is attempting to collect funds from a few remaining defendants against whom default judgments were originally entered. As an alternative, the Trustee is currently discussing the sale of these default judgments to a third party. The Trustee expects to liquidate these default judgments shortly.

### G. Settlement Between the Trustee and Plan Administrator

22. Since the last extension of the term of the Trust, the Trustee and the Plan Administrator finalized a settlement (the "Settlement") regarding the proceeds from various overlapping causes of action that were pursued by both the Trust and the Reorganized Debtors. By order dated February 13, 2009, the Court approved the Settlement. The Settlement allows both the Trustee and the Plan Administrator to, *inter alia*, make distributions to their respective creditor constituencies and simultaneously work towards closing these bankruptcy cases.

23. One of the remaining issues in these bankruptcy cases is the Plan Administrator making final distributions to holders of allowed administrative, priority and secured claims. The Plan Administrator is in the process of reviewing the administrative, secured and priority claims that were previously classified as unknown claims and filing objections where appropriate. On May 15, 2009, the Plan Administrator filed the Motion for Further Extension of Time to Object to Allowance of Certain Claims [Dkt. 4889] seeking the entry of an order extending the time for the Plan Administrator to object to the allowance of certain claims that have been reclassified from unknown claims to administrative, secured and/or priority claims and certain claims that were filed after the deadline for the Plan Administrator to object to administrative, secured and priority claims.

### H. The Term of the Trust

24. Pursuant to the Trust Agreement, "the Trust shall continue until the earlier of (a) the date on which termination of the Trust is approved by the Bankruptcy Court after distribution of all of the Trust Assets or (b) five years from the Effective Date, unless extended by the Bankruptcy Court." (See Exhibit "A," Article VIII).

25. The Court has entered a series of orders extending the term of the Trust. The most recent of those orders was an Order entered on February 12, 2009 wherein the Court extended the term of the Trust through and including June 30, 2009, without prejudice to the right of the Trustee to seek further extensions of the Trust term.

## RELIEF REQUESTED

26. By this Motion, the Trustee respectfully requests that the Court enter the accompanying Order extending the term of the Trust through and including November 13, 2009.

27. Because of the Trustee's need to (i) resolve the last remaining objections to unsecured claims, (ii) administer the distribution process to unsecured creditors that will thereafter follow, (iii) file final tax returns, (iv) prepare a final report, and (v) resolve any and all other issues that need to be resolved in order to close these bankruptcy cases, the Trustee submits that justification exists to further extend the term of the Trust to November 13, 2009.

### Basis for Relief Requested

28. Pursuant to Article XIII of the Trust Agreement, the Court has the authority to extend the term of the Trust. Article XIII of the Trust Agreement provides, in relevant part:

> The Trust shall continue until the earlier of (a) the date on which termination of the Trust is approved by the Bankruptcy Court after distribution of all of the Trust Assets or (b) five years from the Effective Date, <u>unless extended by the Bankruptcy Court</u> ... Notwithstanding the foregoing, in the event that the Trustee determines that all of the Trust Assets will not, despite reasonable efforts, be distributed by the date which is five years from the Effective Date, <u>the Trustee may petition the Bankruptcy Court to extend the term of the Trust</u> for a period reasonably necessary to complete the liquidation and distribution of the Trust Assets. ...

(See Exhibit "A," Art. VIII) (emphasis added).

29. The Trustee submits that the Court also has authority to extend the term of the Trust pursuant to applicable revenue procedures of the Internal Revenue Service ("IRS"). The Trust was created as a bankruptcy liquidating trust under section

301-7701-4(d) of the IRS regulations. The revenue procedure applicable to bankruptcy liquidating trusts provides for an extension of the term of a trust for a finite term if a bankruptcy court finds that "the extension is necessary to the liquidating purpose of the trust." Rev. Proc. 94-95, 1994-2 CB 684, 7/11/94, IRC sec. 7701. If a bankruptcy court approves an extension, such extension must be approved within six (6) months of the beginning of the extended term. Id.

30. The Trustee submits that an extension of the term of the Trust is required for the Trustee to complete the liquidation and distribution of the Trust Assets as specifically summarized in paragraph 27, *supra*.

31. For these reasons, granting an extension of the term of the Trust through and including November 13, 2009 will ensure that the Trustee can fulfill his duties with respect to the Trust and achieve the purposes for which the Trust was established.

## NOTICE

32. Notice of this Motion has been provided as set forth in the Supplemental Order Under Fed. R. Bankr. P. 2002 (M) and 9007 Limiting Service of All Filings dated October 18, 1999. The Trustee respectfully submits that due to the administrative nature of the relief requested, the Court may grant the relief requested without further notice or a hearing.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Court enter the accompanying order extending the term of the Trust and including November 13, 2009, and granting such other and further relief as the Court deems just and proper.

Dated: June 30, 2009

BAYARD, P.A.

By: _____
Neil B. Glassman (No. 2087)
Ashley B. Stitzer (No. 3891)
Daniel A. O'Brien (No. 4897)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
(302) 655-5000

- and -

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
Joseph L. Schwartz (N.J. Bar No. JS-5525)
One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

Attorneys for Joseph A. Pardo, Successor Trustee of the FPA Creditor Trust