# EXHIBIT A

## FPA CREDITOR TRUST AGREEMENT

This Trust Agreement (the "Trust Agreement"), dated as of July 2____, 1999, by and among FPA Medical Management, Inc. and those of its direct and indirect subsidiaries and related professional corporations that are also signatories hereto (collectively, the "Debtors"), as settlors, and B. N. Bahadur, as Trustee, is executed to facilitate the implementation of (a) the Modified Second Amended Joint Plan of Reorganization of FPA Medical Management, Inc. and Its Subsidiaries and Affiliates (the "Plan") that provides for the establishment of the Trust (as hereinafter defined) created hereby and the retention and preservation of the Trust Assets (as hereinafter defined) by the Trustee, as successor to, and representative of, the Debtors' bankruptcy estates in accordance with Sections 1123(b)(3)(B) and 1145(a)(1) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), all for the benefit of the holders ("Claimholders") of Allowed Class 4 General Unsecured Claims (as such term is defined in the Plan) and (b) such other sections of the Plan that deal with the collection, liquidation, and distribution of the Trust Assets as required by the Plan. The Trust is organized for the primary purposes of (x) holding and preserving the value of the Trust Assets, (y) liquidating those Trust Assets that have not yet been reduced to cash, and (z) distributing any proceeds from the Trust Assets or the liquidation thereof. The activities, powers and duties of the Trustee are those determined to be reasonably necessary to, and consistent with, accomplishment of these purposes.

WHEREAS, the Plan contemplates, among other things, the liquidation of the Trust Assets and the distribution of the proceeds from such liquidation to the Claimholders, all as described in greater detail in the Plan and this Trust Agreement; and

WHEREAS, pursuant to the Plan, the Trust is being created to coordinate the liquidation of the Trust Assets on behalf of, and for the benefit of, the Claimholders and to make distributions in accordance with the Plan and this Trust Agreement; and

WHEREAS, under the terms of the Plan and the Confirmation Order, effective as of the Effective Date the Debtors shall be deemed to have granted, assigned, transferred, conveyed, and delivered to the Trustee, on behalf of, and for the benefit of, the Claimholders, control of, and all the rights, title and interests in and to, the Trust Assets; and

WHEREAS, on May 24, 1999, the Bankruptcy Court entered the Confirmation Order (as that term is defined in the Plan);

NOW, THEREFORE, in consideration of the premises and agreements contained herein, the parties hereto agree as follows:

## ARTICLE I

### Establishment of Trust

Section 1.1  Creation and Name.  There is hereby created a trust which shall be known as the "FPA Creditor Trust," which is the Trust created by the Plan.

Section 1.2  Declaration of Trust.  In order to declare the terms and conditions hereof, and in consideration of the confirmation of the Plan under the Bankruptcy Code, the Debtors and the Trustee have executed this Trust Agreement and effective on the Effective Date hereunder the Debtors hereby absolutely assign to the Trustee, and to its successors and assigns, all of the right, title and interests of the Debtors in and to the Trust Assets (not including those assets which have previously been distributed pursuant to the terms of the Plan), to have and to hold unto the Trustee and its successors and assigns forever, in trust nevertheless, under and subject to the terms and conditions set forth herein and in the Plan for the benefit of the Claimholders and their successors and assigns as provided for herein and in the Plan.  The liquidation of the Trust Assets and decisions with respect thereto shall be made, and the proceeds thereof shall be distributed, in accordance with this Trust Agreement and the Plan.

2

Section 1.3  Purpose of Trust.  The Trust is organized for the primary purposes of holding, acquiring, liquidating and distributing the Trust Assets transferred to it and distributing the proceeds to its beneficiaries with no objective to engage in the conduct of a trade or business.  In furtherance of this purpose, the Trustee shall be responsible for supervising and administering the claims resolution process with respect to Disputed Class 4 Claims, and shall be consulted with respect to the litigation of other Claims to the extent the resolution of such Claims impact the Trust or the Trust Assets, resolving all such Disputed Class 4 Claims, liquidating, settling, waiving or prosecuting all Trust Claims, including, without limitation, any claim objections, defenses, counterclaims and causes of action which are transferred to this Trust and to be the representative of all beneficiaries of this Trust in all such litigation, and perform all obligations specified for the Trustee under the Plan.  In the event of any inconsistency between the recitation of the duties and powers of the Trustee as set forth in this Trust Agreement and the Plan, the provisions of the Trust Agreement shall govern.

Section 1.4  Trustee's Acceptance.  The Trustee accepts the trust imposed upon it by this Trust Agreement and agrees to observe and perform that trust, upon and subject to the terms and conditions set forth herein.  In connection with and in furtherance of the purposes of the Trust, the Trustee hereby expressly accepts the transfer and assignment of the Trust Assets, subject to the provisions of the Confirmation Order, and the Trustee hereby further expressly assumes, undertakes and shall control the dispute, resolution and liquidation of Allowed Class 4 Claims and the Trust Claims.  Except as may be agreed by the Trustee or the Plan Administrator or as ordered by the Bankruptcy Court, no person, including without limitation, the Debtors, Reorganized FPA, the Plan Administrator, Humana or the Purchasers, their respective successors and assigns, shall be entitled to any indemnification from the Trust for any expenses, costs or fees (including, without limitation, attorneys' or other professionals' fees and costs), judgements, settlements, claims, demands, actions, causes of action, or other liabilities or obligations unless otherwise expressly stated herein.

3

## ARTICLE II

### Definitions

The capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

Section 2.1  Avoidance Claims means Causes of Action against Persons arising under sections 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws, whether or not litigation is commenced to prosecute such Claims.

Section 2.2  Beneficiaries means those Claimholders who are entitled to distributions of the Trust Assets pursuant to the Plan.

Section 2.3  Code means the Internal Revenue Code of 1986, as amended.

Section 2.4  D&O Claims means (a) Claims or Causes of Action that may be brought by the Debtors or derivatively in the name of the Debtors against any present or former director or officer of any Debtor, except to the extent released hereunder, and any proceeds thereof (regardless of the source of payment, including any D&O Insurance) and (b) Claims or Causes of Action, if any, that may be brought by the Debtors or derivatively in the name of the Debtors against Deloitte & Touche LLP or any of its partners, employees, affiliates, predecessors or successors.

Section 2.5  D&O Insurance means insurance maintained by the Debtors which covers the Debtors' officers and directors.

Section 2.6  Trust means the trust established under this Trust Agreement and the Plan.

4

Section 2.7  **Trust Advisory Board** means the three-member board that is to be created pursuant to Section 11.4 of the Plan for the purpose of advising the Trustee with respect to actions and decisions affecting the Trust.

Section 2.8  **Trust Assets** means those assets owned by the Trust including, without limitation, (a) those assets to be distributed to the Trust pursuant to section 5.4 of the Plan, (b) the Initial Deposit to be paid to the Trust pursuant to the Plan, (c) the Trust Claims, (d) those rights and remedies to be transferred to the Trust as set forth in sections 11.2(a)(ii)-(iv) and 11.2(b) of the Plan, and (e) any and all proceeds of the foregoing and interest accruing with respect thereto; provided, however, that the term Trust Assets specifically excludes Assigned Actions (Coastal) and the Coastal Assigned Claims (as such terms are defined in the Plan).

Section 2.9  **Trust Claims** means Avoidance Claims and D&O Claims.

Section 2.10  **Trust Expenses** means all reasonable costs, expenses and fees incurred by the Trustee and the Trust Advisory Board in the administration of its duties as contemplated herein.

Section 2.11  **Trustee** means the trustee under the Trust, or any successor appointed pursuant to this Trust Agreement.

Section 2.12  **Trust Recoveries** means any and all proceeds received by the Trust from (a) the prosecution of, and collection of, a final judgment of a Trust Claim against a Person or (b) the settlement or other compromise of a Trust Claim against a Person, but does not include the Initial Deposit.

ARTICLE III

Liquidation of Trust Assets

Section 3.1  Liquidation of Trust Assets.

5

(a)   The Trustee shall take such steps as it deems necessary, in its sole discretion, to reduce the Trust Assets to cash to make distributions required hereunder, provided that the Trustee's actions with respect to disposition of the Trust Assets should be taken in such a manner so as reasonably to maximize the value of the Trust Assets.

(b)   The Trustee may transfer, sell, dispose of, liquidate or otherwise compromise (a "Liquidation Opportunity") the Trust Assets based upon the assessment of the Trustee (with the advice of the Trustee's professional advisors) of, among other things, (i) the likelihood that the Trust would later recover a greater amount with respect to such Trust Asset if it did not avail itself of the Liquidation Opportunity, (ii) the estimated costs that will be incurred by the Trust in attempting to receive a greater amount for the Trust Asset, and (iii) the resources of the Trust available for attempting to obtain a greater amount.   To the extent practicable, the Trustee shall follow the directions of the Trust Advisory Board in the Liquidation of Trust Assets, but the Trustee shall not be required to deplete the resources of the Trust or expend its own funds to follow such directions, nor shall the Trustee be required to seek the direction or consent of the Trust Advisory Board on any matter, although the Trustee, in its sole discretion, may do so.

Section 3.2  Retention of Attorneys, Accountants and Other Professionals.

Except as otherwise provided in this Trust Agreement or the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan:

(a)   The Trustee shall retain such law firm(s) as counsel to the Trust as the Trustee, in its sole discretion, may select to aid in the liquidation of the Trust Assets and to perform such other functions as may be appropriate, in the Trustee's sole discretion, but only to the extent necessary to carry out the primary purposes of the Trust.   The Trustee may commit the Trust to and shall pay such law firm(s) reasonable compensation from the Trust Assets for services rendered and expenses incurred.   The Trustee may also, in its sole discretion,

6

engage such law firm(s) on a contingent fee basis as permitted by applicable law.

(b) The Trustee may, but shall not be required to unless directed by the Trust Advisory Board in writing, retain an independent public accounting firm to audit the financial books and records of the Trust and to perform such other reviews and/or audits as may be appropriate, in the Trustee's sole discretion, but only to the extent necessary to carry out the primary purposes of the Trust. The Trustee may commit the Trust to and shall pay such accounting firm reasonable compensation from the Trust Assets for services rendered and expenses incurred.

(c) The Trustee shall retain such experts advisors, consultants, investigators, appraisers, auctioneers or other professionals as the Trustee, in its sole discretion, may deem necessary or appropriate to assist the Trustee in carrying out its powers and duties under this Trust Agreement, but only to the extent necessary to carry out the primary purposes of the Trust. The Trustee may commit the Trust to and shall pay all such persons or entities reasonable compensation from the Trust Assets for services rendered and expenses incurred.

## Section 3.3 Additional Powers

(a) Except as provided in the Plan or otherwise specified herein, the Trustee need not obtain the order or approval of any court, including the Court, in the exercise of any power or discretion conferred hereunder or account to any court including the Court, in the absence of a breach of trust (other than as set forth herein).

(b) The Trustee shall not have the power to guarantee any debt of any Person.

(c) The Trustee shall not have the power to enter into any contract or otherwise engage in any transaction with any Person affiliated with the Trustee, provided that the Trustee may employ BBK Limited and its members and employees to assist with any matters relating to the Trust.

7

(d)   The Trustee is directed, consistent with the purposes of the Trust and this Agreement, to administer and manage the Trust Assets within its discretion and in the exercise of its business judgment.

(e)   The Trustee shall have no responsibility for the assets or business affairs of the Debtors and shall not be required to take any action to preserve or safeguard any right, asset or property, or defend the Debtors from any asserted liability.

(f)   Except as otherwise provided in this Trust Agreement, the Plan or the Confirmation Order, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Trustee may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof and over the management and conduct of the business of the Trust to the same extent as if the Trustee were the sole owner thereof in its own right.  No person dealing with the Trust shall be obligated to inquire into the authority of the Trustee in connection with the acquisition, management or disposition of Trust Assets.

(g)   In connection with the management and use of the Trust Assets, the Trustee, except as otherwise expressly limited in this Trust Agreement, the Plan, and the Confirmation Order, shall have, in addition to any powers conferred upon it by any other provision of this Trust Agreement, the power to take any and all actions as, in the Trustee's sole discretion, are necessary or advisable to effectuate the primary purposes of the Trust, including, without limitation, the power and authority to, or to cause the FPA Creditor Trust to:

(i)   accept the assets transferred and provided to the Trust under this Trust Agreement and the Plan;

(ii)   distribute the proceeds from the liquidation of the Trust Assets to Beneficiaries in accordance with the terms of this Trust Agreement and the Plan;

(iii)   sell, convey, transfer, assign, liquidate, collect or abandon Trust

8

Assets, or any part thereof or any interest
therein, upon such terms and for such consider-
ation as the Trustee, in its sole discretion,
deems desirable or appropriate;

    (iv) prosecute all suits as may
be necessary, appropriate or incident to the
purposes of the Trust, including, without limi-
tation, the prosecution of claims relating to
indebtedness, postpetition transactions, pref-
erence, fraudulent transfer and other claims
available under the Bankruptcy Code or other-
wise;

    (v) endorse the payment of
notes or other obligations of any person or to
make contracts with respect thereto;

    (vi) engage in all acts that
would constitute ordinary course of business in
performing the obligations of a trustee under a
trust of this type;

    (vii) remove all or any of the
Trust Assets or the situs of administration of
the Trust from one jurisdiction to another
jurisdiction in the United States at any time
or from time to time;

    (viii) in connection with any
property held hereunder which is distributable
or payable to a minor, transfer and pay over
all or any portion thereof to such minor, or to
a guardian of the property of such minor, when-
ever appointed, without requiring ancillary
guardianship, or to a parent of such minor or
the person with whom such minor resides, or to
any custodian under any Uniform Gifts to Minors
Act or Uniform Transfer to Minor Act with power
to select any person or trust company (includ-
ing any fiduciary hereunder) to be such custo-
dian and with power to extend such custodian-
ship to age twenty-one (21) years, without any
obligation to see to the use or application
thereof or to make inquiry with respect to any
other property available for the use of such
minor, the receipt by such minor, guardian,

parent, person or custodian to be a complete discharge as to such transfer or payment;

      (ix)  borrow such sums of money, at any time and from time to time, from such periods of time and upon such terms and conditions for such persons or corporations (including any fiduciary hereunder) for such purposes as may be deemed advisable, and secure such loans by the pledge or hypothecation of any property held hereunder subject to those liens contemplated pursuant to the Plan;

      (x)  change the state of domicile of the Trust;

      (xi)  establish such funds, reserves and accounts within the Trust as deemed by the Trustee, in its discretion, to be useful in carrying out the purposes of the Trust;

      (xii)  sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitration or other proceeding;

      (xiii)  in accordance with this Agreement, indemnify (and purchase insurance indemnifying) the Trustee, the Trust Advisory Board and the employees, agents and representatives of the Trust or the Trustee and the members of the Trust Advisory Board, to the fullest extent that a corporation organized under the laws of the Trust's domicile is from time to time entitled to indemnify its directors, officers, employees, agents and representatives;

      (xiv)  delegate any or all of the discretionary power and authority herein conferred at any time with respect to all or any portion of the Trust to any one or more reputable individuals or recognized institutional advisors or investment managers without liability for any action taken or omission made because of such delegation, except for such liability as is provided herein;

10

(xv)   consult with the Debtors,
or with the Trust Advisory Board, at such times
and with respect to such issues relating to the
conduct of the Trust as the Trustee considers
desirable; and

(xvi)   perform such other acts
and undertake such other conduct as the
Trustee, in its sole discretion, believes is
necessary to carry out the purposes and intent
of this Trust.

The Trustee shall not at any time, on behalf of the Trust
or the Holders, enter into or engage in any trade or
business, and no part of the Trust Assets shall be used
or disposed of by the Trustee in furtherance of any trade
or business.

## ARTICLE IV

## General Powers, Rights and Obligations of the Trustee

Section 4.1   Title.   The Trustee shall hold
legal title to all Trust Assets except that the Trustee
may cause legal title or evidence of title to any of the
Trust Assets to be held by any nominee or person, on such
terms, in such manner and with such power as the Trustee
may determine in its sole and absolute discretion and to
the extent permitted by law, may cause the Trust Assets
to be titled in the name of the Trust directly.

Section 4.2   Distribution of Trust Recoveries.

(a)   *Distributions from Trust Disbursement
Account*.   The Trustee shall make distributions of Trust
Assets as follows: first, to the holders of Claims for
unpaid Trust Expenses until such Claims are paid in full;
second, to repay amounts, if any, borrowed by the Trustee
in accordance with this Trust Agreement; and, third, to
make distributions to the Beneficiaries in accordance
with the Plan.

(b)   *Timing of Distributions*.   The Trustee
shall distribute all proceeds from the liquidation of

11

Trust Assets, or income from investments, _first_, to the holders of Claims for Trust Expenses that are not satisfied until such Claims are paid in full and, _second_, to repay amounts if any, borrowed by the Trustee in accordance with this Trust Agreement. Distributions to Beneficiaries of funds received from the liquidation of Trust Assets shall be made in accordance with the Plan and at least semi-annually beginning with a calendar quarter that is not later than the end of the second calendar quarter after the Effective Date; _provided, however_, that the Trustee shall not be required to make any such semi-annual distribution in the event that the Trustee determines, in its sole discretion, after consultation with the Trust Advisory Board, that the aggregate proceeds and income available for distribution to Beneficiaries is insufficient to make a distribution at that time. The Trustee shall retain only the amount of proceeds or income reasonably necessary to meet expenses, claims and contingent liabilities of the Trust, as determined in the Trustee's sole discretion, after consultation with the Trust Advisory Board. The Trustee will make continuing efforts to dispose of the Trust Assets, make timely distributions, and not unduly prolong the duration of the Trust.

(c) _Allocation Among Beneficiaries_. The distribution of Trust Assets or the proceeds from the liquidation of Trust Assets shall be divided among Beneficiaries as provided in the Plan. Notwithstanding the foregoing, the Trustee shall, in its discretion, use the gross proceeds of any Trust Assets to fund ongoing litigation and any fees and expenses incurred by the Trust or the Trustee. The Trustee, however, shall allocate the net proceeds of any Avoidance Actions to the creditors of the appropriate Estate when making distributions to unsecured creditors.

Section 4.3  Reports and Notices.

(a) The Trustee shall distribute to the members of the Trust Advisory Board an annual report showing, among other things, all transactions consummated by the Trust during the period covered by such report, payments made or received in respect thereof and all other receipts or disbursements, as well as the hours and other resources expended by the Trustee and its employees

12

and advisors on matters related to the Trust during the period covered by such report. Such annual report shall be distributed to the members of the Trust Advisory Board and filed with the Bankruptcy Court on each one year anniversary of the establishment of the Trust. Such reports shall be prepared by the Trustee in accordance with such accounting principles as may be applicable to an entity such as the Trust, at such periodic intervals as the Trustee shall from time to time determine in its sole and absolute discretion.

(b) The Trustee shall prepare and provide to, or file with, the appropriate parties such notices, tax returns and other filings as may be required by the Code and may be required by applicable law of other jurisdictions. The Trustee shall, when specifically requested by a Beneficiary in writing, make such tax information available to the Beneficiary for inspection and copying at the Beneficiary's expense, as is necessary for the preparation by such Beneficiary of its income tax return.

Section 4.4 Investment Obligations. The Trustee shall invest and re-invest the liquid Trust Assets exclusively in one or more of the following short-term investments from time to time as determined by the Trustee, in its sole discretion, after consultation with the Trust Advisory Board:

(a) Direct obligations (or securities, receipts or certificates representing an ownership interest in such obligations or specified portions thereof) of, or obligations the timely payment of principal of and interest on which are unconditionally guaranteed by, the United States of America (including any agency or instrumentality thereof) for the payment of which the full faith and credit of the United States of America is pledged ("U.S. Government Obligations"), with a maximum maturity of one (1) month from the date of such investment; or

(b) repurchase agreements (fully secured by U.S. Government Obligations), with a maximum maturity of one (1) month from the date of such investment; or

(c) interest-bearing deposit accounts (which may be time deposits or evidenced by certificates

13

of deposit, including Eurodollar certificates of deposit, with a maximum maturity of one (1) month from the date of such investment) in one or more banking institutions, each having a combined capital and surplus of not less than $150,000,000; or

(d) money market mutual funds, each having not less than $500,000,000 in assets and invested principally in one or more of the following: (i) U.S. Government Obligations which mature within less than one (1) year from the date of acquisition thereof, (ii) marketable direct full faith and credit obligations of any state of the United States of America, or any county, city, town, township or other governmental subdivision of any such state, which mature within less than one (1) year from the date of acquisition thereof, provided that such obligations are accorded an investment grade rating by Moody's Investors Service, Inc. of at least P-1 and Standard & Poor's Inc. of a least A-1, (iii) commercial paper of corporations maturing within one hundred eighty (180) days from the date of issue, provided that such paper is accorded an investment grade rating by Moody's Investors Service, Inc. of at least P-1 and Standard & Poor's Inc. of at least A-1, and (iv) certificates of deposit maturing within one (1) year from the date of purchase and issued by any bank organized under the laws of the United States of America or a state thereof whose long-term debt, or the long-term debt of the bank holding company of the banking group of which such bank is a member, is accorded an investment grade rating by Moody's Investors Service of at least P-1 and Standard & Poor's Corporation of at least A-1; or

(e) commercial paper of corporations maturing within one hundred eighty (180) days from the date of issue, provided such paper is accorded an investment grade rating by Moody's Investors Service of at least P-1 and by Standard & Poor's Inc. of at least A-1 and has a remaining maximum maturity of one (1) month from the date of such investment.

Anything contained in this Agreement to the contrary notwithstanding, the Trustee shall not be liable in any way for any loss or other liability arising from any investment, or the sale or other disposition of any investment, made in accordance with this Section, except for any such loss or liability arising from the gross

14

negligence, willful misconduct or bad faith of the
Trustee.

## ARTICLE V

### The Trustee and the Trust Advisory Board

Section 5.1  Resignation of Trustee.  The
Trustee may resign as Trustee at any time by giving
written notice of its resignation to the Trust Advisory
Board.  The Trustee shall continue to serve as trustee
for the shorter of (a) 90 days following the tender of
the notice of resignation or (b) until such time as the
appointment of a successor Trustee shall become effective
in accordance with Section 5.3 hereof.

Section 5.2  Removal of Trustee.  The Trust
Advisory Board may remove the Trustee in the event of
gross negligence or willful misconduct; provided, how-
ever, that such removal is approved by a majority of the
members of the Trust Advisory Board.  In the event the
requisite approval is not obtained, the Trustee may be
removed by the Bankruptcy Court for cause shown upon a
motion by any member of the Trust Advisory Board.

Section 5.3  Appointment of Successor Trustee.
In the event of the death (in the case of a Trustee that
is a natural person), dissolution (in the case of a
Trustee that is not a natural person), resignation,
incompetency or removal of the Trustee, the members of
the Trust Advisory Board appointed by the Committee
shall, by majority vote, designate a person to serve as
Successor Trustee.  Such appointment shall specify the
date on which such appointment shall be effective.  Every
successor Trustee appointed hereunder shall execute,
acknowledge and deliver to the Bankruptcy Court and to
the retiring Trustee an instrument accepting such ap-
pointment, and thereupon such successor Trustee, without
any further act, deed or conveyance, shall become vested
with all the rights, powers, trusts and duties of the
retiring Trustee.

Section 5.4  Trust Continuance.  The death,
dissolution, resignation, incompetency or removal of the
Trustee shall not operate to terminate the Trust created
by this Trust Agreement or to revoke any existing agency
created under the terms of this Trust Agreement or inval-

15

idate any action theretofore taken by the Trustee. In the event of the resignation or removal of the Trustee, such Trustee shall promptly (a) execute and deliver such documents, instruments and other writings as may be requested by the Bankruptcy Court or reasonably requested by the Trust Advisory Board or successor Trustee to effect the termination of the Trustee's capacity under this Trust Agreement and the conveyance of the Trust Assets then held by the Trustee to his or its successor, (b) deliver to the Bankruptcy Court or the successor Trustee all documents, instruments, records and other writings related to the Trust as may be in the possession of the Trustee and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Trustee.

Section 5.5    Trust Advisory Board.   On the Effective Date, the Trust Advisory Board shall be established, using the procedures described in the Plan.   The members of the Trust Advisory Board shall be compensated, as provided for herein, and shall be reimbursed for all reasonable out-of-pocket expenses.   The members of the Trust Advisory Board shall disclose to the Trustee and all other members of the Trust Advisory Board whether any general unsecured claim or equity interest (relating to the Debtors) which is held by them personally, by any relative or by any entity with which they are employed or affiliated has been sold, transferred or otherwise assigned, disposed of or satisfied by any entity other than the Trust.

(a)    Resignation and Replacement of Trust Advisory Board Members.   In the case of an inability or unwillingness of any member of the Trust Advisory Board to serve, such member shall be replaced by designation of the remaining members of the Trust Advisory Board.   If any position on the Trust Advisory Board remains vacant for more than thirty (30) days, such vacancy shall be filled within fifteen (15) days thereafter by the designation of the Trustee without the requirement of a vote by the other members of the Trust Advisory Board.

(b)    Termination of the Trust Advisory Board.   Upon the certification by the Trustee that all assets transferred into the Trust have been distributed, abandoned or otherwise disposed of, the members of the

16

Trust Advisory Board shall resign their positions, where-upon they shall be discharged from further duties and responsibilities.

      (c)  Duties of the Trust Advisory Board. The Trust Advisory Board shall have the following duties and responsibilities:

        (i)  The Trust Advisory Board shall advise the Trustee regarding the sale or other disposition of assets contained in the Trust and such other matters as may be requested by the Trustee or may be provided for herein.

        (ii)  The Trust Advisory Board shall, by majority vote, direct the Trustee as to the dates and amounts of any distributions which may be made pursuant to the Trust Agreement consistent with the provisions of the Plan and this Trust Agreement. The Trust Advisory Board may not under any circumstances require the Trustee to disburse funds if, in the Trustee's sole discretion, such disbursement would leave the Trustee with insufficient funds to pay the required dividends to the holders of Disputed Class 4 Claims or deplete reasonable reserves for the Trust's and the Trustee's fees, costs and expenses.

        (iii)  The Trust Advisory Board shall, by majority vote, set the general parameters under which Trust Claims may be settled by the Trustee.

        (iv)  The Trust Advisory Board may, by majority vote, approve all settlements of Trust Claims which the Trustee may propose, subject to Bankruptcy Court approval of such settlements after notice and a hearing, _provided, however_, that (A) no member of the Trust Advisory Board may cast a vote with respect to any Trust Claim to which it is a party or to which it is not "disinterested" as such term is defined in 11 U.S.C. § 101(14), and (B) the Trustee may seek Bankruptcy Court approval of a settlement of a Trust Claim if the Trust Advi-

17

sory Board fails to act on a proposed settle-
ment of such Trust Claim within thirty (30)
days of receiving notice of such proposed set-
tlement by the Trustee.

(v)   The Trust Advisory Board
may, by majority vote, authorize the Trustee to
invest the corpus of the Trust in prudent in-
vestments other than those described in section
345 of the Bankruptcy Code.

(vi)   The Trust Advisory Board
may require a fidelity bond from the Trustee in
such reasonable amount as may be agreed to by
majority vote of the Trust Advisory Board.

(vii)   The Trust Advisory Board
shall govern its proceedings through the adop-
tion of by-laws, which the Trust Advisory Board
may adopt by majority vote.  No provision of
such by-laws shall supersede any express provi-
sion of the Plan.

Section 5.6  Compensation.

(a)   Compensation to the Trustee.   The
Trust Advisory Board shall negotiate with and authorize
the payment of reasonable compensation from the Trust
Assets to the Trustee for services rendered and expenses
incurred in fulfilling its duties pursuant to this Agree-
ment.

(b)   Compensation to Trust Advisory Board
Members.  The members of the Trust Advisory Board shall
be entitled to reasonable compensation for their services
and reimbursement of their reasonable expenses.  For the
first six full months following the month in which the
Effective Date occurs, such Trust Advisory Board members
shall each receive compensation of $10,000 per month,
plus reimbursement of all reasonable expenses incurred
during the prior month.  The fee payable for the month in
which the Effective Date occurs shall be payable on the
Effective Date, and shall be prorated based on a $10,000
monthly fee and calculated for the actual number of days
during such month that the members will serve.  In all
other cases, such fee will be payable on the first busi-

18

ness day of the month (being the first day upon which banking institutions in the State of Delaware are not authorized or required by law or regulation to be closed). Six months following the Effective Date, and annually thereafter, the Advisory Board Members and the Trustee shall negotiate the amount and payment terms of the compensation to such Advisory Board Members for the following one-year period. If no agreement is reached, the parties may seek the determination of the Bankruptcy Court as to reasonable compensation.

Section 5.7   Standard of Care; Exculpation. The Trustee shall not be personally liable to the Trust or to any Beneficiary (or any successor of such entities) except for such of its own acts as shall constitute bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Trust Agreement. No Trustee shall be liable for any act or omission of any other agent, attorney, accountant, representative or employee of the Trust, unless the Trustee acted with bad faith or willful misconduct in the selection or retention of such agent, attorney, accountant, representative or employee. In addition, no Trustee shall be in any way liable for any act taken, or omission made, in good faith and at the direction of the Trust Advisory Board pursuant to this Agreement. Except as aforesaid, the Trustee shall be defended, held harmless and indemnified from time to time from the Trust Assets but not from or by the Beneficiaries or any of the parties released in the Plan, against any and all losses, claims, demands, damages, costs, expenses (including, without limitation, reasonable attorneys' fees) and liabilities to which the Trustee may be subject by reason of the Trustee's execution in good faith of its duties under this Trust Agreement. The Trustee shall be entitled to advancement of its expenses under this paragraph provided that the Trustee shall be obligated to repay any amounts advanced to or on behalf of the Trustee if a court of competent jurisdiction shall determine that the Trustee violated its standard of care hereunder. The members of the Trust Advisory Board shall not be personally liable to the Trust or to any Beneficiary (or any successor of such entities) except for such of their own respective acts as shall constitute bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Trust Agreement. The members of the Trust Advisory Board and any officers,

19

employees and agents of the Trustee or any member of the Trust Advisory Board shall be defended, held harmless and indemnified and shall be entitled to advancement of their compensation if any, and expenses provided, however, that if a member of the Trust Advisory Board violates the standards of care hereunder, such member shall be obligated to repay any amounts advanced hereunder. The obligation of the Trust to indemnify the Trustee, the members of the Trust Advisory Board and their respective officers, employees, professionals and agents hereunder, and such Person's rights to be compensated and to be reimbursed for their reasonable out-of-pocket expenses and disbursements, shall constituted indebtedness of the Trust. In acting hereunder, the Trustee and any co-trustee or separate trustee acts solely as a trustee and not in its individual capacity, and similarly, any member of the Trust Advisory Board acts in its representative and not individual capacity. Except as expressly provided in Section 5.7 hereof, all persons having any claim against the Trust, the Trustee, any co-trustee or separate trustee, or any member of the Trust Advisory Board by reason of the transactions contemplated hereby shall look only to the Trust Assets for payment or satisfaction thereof.

Section 5.8 Reliance by Trustee. The Trustee may rely, and shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order or other instrument or document that it has no reason to believe to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission or receipt. In the absence of its bad faith, willful misconduct, gross negligence, willful disregard of its duties or material breach of this Trust Agreement, the Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon. The Trustee may consult with legal counsel or other professionals and shall be fully protected in respect of any action taken or suffered by it in accordance with the advice or opinion of legal counsel or other professionals. The Trustee

may at any time seek instructions from the Bankruptcy Court concerning the acquisition, management or disposition of the Trust Assets or any other matters arising under or relating to the Plan or the Trust.

Section 5.9  Action Upon Instructions.  If (a) in performing the Trustee's duties under this Agreement, the Trustee is required to decide between alternative courses of action, or (b) the Trustee is unsure of the application of any provision of this Agreement or the Plan, then the Trustee may promptly deliver a notice to the Trust Advisory Board requesting written instructions as to the course of action to be taken by the Trustee. If the Trustee does not receive such written directions within 10 business days after it has delivered such notice, or such shorter period of time set forth in such notice, the Trustee may, but shall be under no duty to, take or refrain from taking such action not inconsistent with this Agreement as the Trustee shall deem advisable. In the event that the Trustee does not receive direction from the Trust Advisory Board within the requisite time period or the Trustee, in its sole and absolute discretion, believes that a court order is necessary or advisable to protect the interests of the Beneficiaries, the Trustee may apply to the Bankruptcy Court for a determination as to the course of action to be taken by the Trustee.

Section 5.10  Co-Trustees or Separate Trustees.

(a)  At any time or times, in order to (and only to the extent necessary to) (i) qualify the Trust as a business trust in Delaware or in any other jurisdiction, or (ii) for the purpose of meeting any legal requirements of any jurisdiction in which any of the Trust Assets may at the time be located, the Trustee shall have the power to appoint one or more individuals or corporations either to act as co-trustee or co-trustees jointly with the Trustee of all or any part of the Trust Assets or to act as separate trustee or separate trustees of all or any part of the Trust Assets and to vest in such person or persons, in such capacity, such title to the Trust Assets or any part thereof, and such rights, powers, duties, trusts or obligations as may be necessary for the Trustee to perform hereunder, subject to the remaining provisions of this Section.

21

(b) Unless otherwise provided in the instrument appointing such co-trustee or separate trustee, every co-trustee or separate trustee shall, to the extent permitted by law, be appointed subject to the following terms, namely:

(i) All rights, powers, trusts, duties and obligations conferred or imposed by this Agreement upon the Trustee in respect of the custody, control or management of monies, papers, securities and other personal property shall be exercised solely by the Trustee;

(ii) All rights, powers, trusts, duties and obligations conferred or imposed by this Agreement upon such trustees shall be conferred or imposed upon and exercised or performed by the Trustee, or by the Trustee and such co-trustee or co-trustees, or separate trustee and separate trustees jointly, except when, under the law of any jurisdiction in which any particular act or acts are to be performed, the Trustee shall be incompetent or unqualified to perform such act or acts, in which event, subject to clause (iv), such act or acts as shall be performed by such co-trustee or co-trustees or separate trustee or separate trustees;

(iii) Any request in writing by the Trustee to any co-trustee or separate trustee to take or to refrain from taking any action hereunder shall be sufficient warrant for the taking, or the refraining from taking, of such action by such co-trustee or separate trustee;

(iv) Any co-trustee or separate trustee to the extent permitted by law shall delegate to the Trustee the exercise of any right, power, trust, duty or obligation, discretionary or otherwise;

(v) The Trustee, at any time, by an instrument in writing, may accept the resignation of or remove any co-trustee or separate trustee appointed under this Section.

22

A successor to any co-trustee or separate trustee so resigned or removed may be appointed in the manner provided in this Section;

(vi) Neither the Trustee nor any co-trustee or separate trustee appointed hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder selected by it with reasonable care;

(vii) Any demand, request, direction, appointment, removal, notice, consent, waiver or other action in writing delivered to the Trustee shall be deemed to have been delivered to each such co-trustee or separate trustee;

(viii) Any moneys, papers, securities or other items of personal property received by any such co-trustee or separate trustee hereunder shall forthwith, so far as may be permitted by law, be turned over to the Trustee to be held pursuant to the terms hereof; and

(ix) Any co-trustee appointed solely to qualify the Trust as a Delaware or other statutory business trust shall have no liability or responsibility for any of the duties and responsibilities under Article III or otherwise, except to maintain such offices and to execute such certificates as are required to be executed by all trustees and to take such other actions as are required under the applicable statute authorizing such business trust.

(c) Upon the Trustee's acceptance in writing of such appointment by any such co-trustee or separate trustee, it or such person shall be vested with the estates' right, title and interest in the Trust Assets, or portion thereof, and with such rights, powers, duties, trusts or obligations, jointly or separately with the Trustee, all as shall be specified in the instrument of appointment, subject to all the terms hereof. Every such acceptance shall be filed with the Trustee.

23

(d)   In case any co-trustee or separate trustee shall die, become incapable of acting, resign or be removed, the estate, right, title and interest in the Trust Assets and all rights, power, trusts, duties and obligations of such co-trustee or separate trustee shall, so far as permitted by law, vest in and be exercised by the Trustee unless and until a successor co-trustee or separate trustee shall be appointed pursuant to this Section.

Section 5.11   Investment Company Act.   The Trust is organized as a liquidating entity in the process of liquidation, and therefore should not be considered, and the Trust does not and will not hold itself out as, an "investment company" or an entity "controlled" by an "investment company" as such terms are defined in the Investment Company Act.

## ARTICLE VI

### Beneficial Interest in the Trust

Beneficial interests in the Trust will not be evidenced by certificates, will not be listed on any national securities exchange or the Nasdaq National Market and with respect to beneficial interests in the Trust, neither the Trust nor its management will engage the services of any active market maker, facilitate the development of an active trading market or encourage others to do so, place any advertisements in the media promoting investments in the Trust or collect or publish any information about prices at which such beneficial interests may be transferred.

## ARTICLE VII

### Retention of Jurisdiction

The Bankruptcy Court shall retain exclusive jurisdiction over (a) the Trust, the Trustee and the Trust Assets, including, without limitation, the determination of all controversies and disputes arising under or in connection with this Trust Agreement, and (b) the determination of any objection by the Trust Advisory Board to the compensation of the Trustee and its professional advisors.

24

## ARTICLE VIII

### Termination

The Trust shall continue until the earlier of
(a) the date on which termination of the Trust is approved by the Bankruptcy Court after distribution of all
of the Trust Assets or (b) five years from the Effective
Date, unless extended by the Bankruptcy Court. The
Trustee shall at all times endeavor to liquidate expeditiously the Trust Assets, and in no event shall the
Trustee unduly prolong the duration of the Trust. Notwithstanding the foregoing, in the event that the Trustee
determines that all of the Trust Assets will not, despite
reasonable efforts, be distributed by the date which is
five years from the Effective Date, the Trustee may
petition the Bankruptcy Court to extend the term of the
Trust for a period reasonably necessary to complete the
liquidation and distribution of the Trust Assets. Upon
termination of this Trust, the Trustee shall advise the
Bankruptcy Court in writing of its termination. Notwithstanding the foregoing, after the termination of the
Trust, the Trustee shall have the power to exercise all
the powers, authorities and discretions herein conferred
solely for the purpose of liquidating and winding up the
affairs of the Trust. Upon distribution of all of the
Trust Assets, the Trustee shall retain the books, records
and files that shall have been delivered to or created by
the Trustee. At the Trustee's discretion, all of such
records and documents may be destroyed at any time after
two years from the distribution of all of the Trust
Assets.

### ARTICLE IX

### Miscellaneous

Section 9.1 Notices. All notices, requests or
other communications required or permitted to be made in
accordance with this Trust Agreement shall be in writing
and shall be delivered personally or by telephone or
facsimile transmission or mailed by first-class mail or
by overnight delivery service:

25

If to the Trustee, at:

> B. N. Bahadur C/O BBK, Ltd.
> 300 Galleria Officentre
> Suite 103
> Southfield, MI 48034
> Telephone: (248) 356-0800
> Facsimile: (248) 356-5441

with copies to:

the Trust Advisory Board, at:

> M. Jeffrey Brownawell
> Memorial Hermann Hospital Systems
> Managed Care and Government Reporting
> 7737 Southwest Freeway, Suite 245
> Houston, TX 77074
> Telephone: (713) 776-5715
> Facsimile: (713) 776-5431

and

> Karen E. Ferrell
> Ferrell Consulting Group
> 2475 N. Winds Parkway, Suite 200
> Alpharetti, GA 30004
> Telephone: (678) 393-1600
> Facsimile: (770) 753-6100

and

> Melissa Matthews
> Corporate Trust Department
> First Union National Bank
> 21 S. Street Third Floor
> Morristown, NJ 07960
> Telephone: (973) 808-7159
> Facsimile: (973) 682-4531

Notices sent out by facsimile transmission shall be deemed delivered when actually received, and notices sent by first-class mail shall be deemed delivered three business days after mailing and notices sent by overnight delivery service shall be deemed delivered the next business day after mailing.

Section 9.2 Effectiveness. This Trust Agreement shall become effective on the Effective Date.

Section 9.3 Intention of Parties to Establish Trust. This Trust Agreement is intended to create a trust, and the Trust created hereunder shall be governed and construed in all respects as a trust.

Section 9.4 Taxation. It is intended that the Trust be classified as a liquidating trust under § 301.7701-4 of the Procedure and Administration Regulations and as a grantor trust subject to the provisions of Sub-chapter J, Subpart E of the Code that is owned by its beneficiaries as grantors. Accordingly, the parties hereto intend that the Beneficiaries are treated as if they had received a distribution of the Trust Assets and had then contributed such assets to the Trust.

Section 9.5 Counterparts. This Trust Agreement may be executed in one or more counterparts (via facsimile or otherwise), each of which shall be deemed an original but which together shall constitute but one and the same instrument.

Section 9.6 Governing Law. This Trust Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of Delaware.

Section 9.7 Headings. Sections, subheadings and other headings used in this Trust Agreement are for convenience only and shall not affect the construction of this Trust Agreement.

Section 9.8 Severability. Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

Section 9.9 Amendments. This Trust Agreement may be amended from time to time by the Trustee with the approval of the Trust Advisory Board.

27

Section 9.10  Successors.  This Trust Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

Section 9.11  No Suits by Claimholders.  No Claimholder shall have any right by virtue of any provision of this Trust Agreement to institute any action or proceeding in law or in equity against any party other than the Trustee upon or under or with respect to the Trust Assets.

Section 9.12  Records.  Reorganized FPA and the Plan Administrator shall cooperate with the Trustee in pursuing Trust Recoveries and shall afford reasonable access during normal business hours, upon reasonable notice, to personnel and books and records of the Debtors (to the extent such records are in their possession) to representatives of the Trust to enable the Trustee to perform the Trustee's tasks under this Agreement and the Plan; provided, however, that neither the Plan Administrator nor Reorganized FPA will not be required to make expenditures in response to such requests determined by them to be unreasonable.  The Bankruptcy Court retains jurisdiction to determine the reasonableness of either a request for assistance and/or a related expenditure.  Any requests for assistance shall not interfere with Reorganized FPA's or the Plan Administrator's business operations, if any.  If the Plan Administrator or Reorganized FPA assign, sell, transfer or otherwise convey substantially all of their assets, they shall ensure that the Trustee and the Trust will be able to access any and all books and records relating to Trust Assets and any purchaser, successor or assignee shall expressly agree to bound to this provision of the Trust Agreement.

Section 9.13  Intervention.  On the Effective Date, and without requirement of obtaining any further order of Court, the Trustee shall be deemed to have intervened as Plaintiff, Movant, Defendant or additional party, as appropriate, in any adversary proceeding, contested matter, claim objection or other motion which was filed prior to the Effective Date, where the subject matter of such action involves a Class 4 Claim or a Trust Claim or any other Claim to the extent such Claim impacts the Trust Assets.

28

Section 9.14 Irrevocability. The Trust is irrevocable, but is subject to amendment as provided for herein.

Section 9.15 Dispute. Any disputes which arise under this Agreement shall be resolved by the Court as set forth in the Plan, unless the Court declines jurisdiction, in which case such disputes may be resolved by any court of competent jurisdiction. Notwithstanding anything contained herein to the contrary, to the extent a provision of this Agreement is inconsistent with any provision of the Plan or the Confirmation Order, the Plan or the Confirmation Order, as applicable, shall control.

Section 9.16 Enforcement and Administration. The provisions of this Agreement shall be enforced and administered by the Court as set forth in the Plan.

IN WITNESS WHEREOF, the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

FPA MEDICAL MANAGEMENT, INC.
AHI HEALTHCARE SYSTEMS, INC.
AHI (TEXAS) HEALTHCARE SYSTEMS, INC.
AMG MANAGEMENT COMPANY
AMERICAN HEALTH MEDICAL GROUP,
  DOWNEY, INC.
AVANTI HEALTH SYSTEMS OF TEXAS, INC.
BEVERLY HILLS/WEST LOS ANGELES
  MEDICAL NETWORK, A MEDICAL GROUP,
  INC.
BHP IPA, INC.
CENTURY FAMILY MEDICAL GROUP, INC.
CINCINNATI HEALTH PARTNERS, INC.
COMPREHENSIVE PRIMARY CARE MSO, INC.
CONNEKT, LLC
CORNERSTONE PHYSICIANS CORPORATION
CORNERSTONE PHYSICIANS OF PHOENIX,
  INC.
FAMILY PRACTICE ASSOCIATES OF
  SOUTHERN CALIFORNIA, A MEDICAL
  CORPORATION
FHC IPA, INC.

29

FHMG/TDMC MEDICAL GROUP, A
PROFESSIONAL CORPORATION
FOUNDATION HEALTH IPA, A PROFESSIONAL
MEDICAL CORP.
FPA ACQUISITION CORP.
FPA AXMINSTER MEDICAL GROUP, INC.
FPA HOLDING COMPANY OF CALIFORNIA,
INC.
FPA INDEPENDENT PRACTICE ASSOCIATION,
A MEDICAL CORP.
FPA MEDICAL GROUP OF CALIFORNIA, INC.
FPA MEDICAL GROUP OF FLORIDA, INC.
FPA MEDICAL GROUP OF GEORGIA, P.C.
FPA MEDICAL GROUP OF KENTUCKY, INC.
FPA MEDICAL GROUP OF NORTHERN
CALIFORNIA, INC.
FPA MEDICAL GROUP OF TEXAS, A TEXAS
PROFESSIONAL ASSOCIATION
FPA MEDICAL GROUP OF THE GREATER BAY
AREA, INC.
FPA MEDICAL GROUP, P.A.
FPA MEDICAL MANAGEMENT OF ARIZONA,
INC.
FPA MEDICAL MANAGEMENT OF FLORIDA,
INC.
FPA MEDICAL MANAGEMENT OF GEORGIA,
INC.
FPA MEDICAL MANAGEMENT OF ILLINOIS,
INC.
FPA MEDICAL MANAGEMENT OF KENTUCKY,
INC.
FPA MEDICAL MANAGEMENT OF LOUISIANA,
INC.
FPA MEDICAL MANAGEMENT OF MISSOURI,
INC.
FPA MEDICAL MANAGEMENT OF NORTH
CAROLINA, INC.
FPA MEDICAL MANAGEMENT OF SOUTH
CAROLINA, INC.
FPA MEDICAL MANAGEMENT OF TENNESSEE,
INC.
FPA MEDICAL MANAGEMENT OF TEXAS, INC.
FPA MEDICAL MANAGEMENT OF THE
MID-ATLANTIC, INC.
FPA SURGICAL CENTER, INC.
FPA WOMEN'S CARE OF GEORGIA, INC.
FPA OF GEORGIA, INC.

GATEWAY IPA, INC.
GATEWAY PHYSICIANS SERVICES, INC.
GOTHAM MANAGEMENT, INC.
G.P.M. IPA, INC.
HAYWARD VESPER MEDICAL GROUP, INC.
HEALTH ONE ASSOCIATES, INC.
HEALTH PARTNERS, INC.
HEALTHCAP, INC.
HEALTHCAP-MISSOURI, INC.
HEALTHCAP-NEVADA, INC.
INTERGROUP IPA, P.C.
MID-LEVEL PRACTITIONERS, INC.
MONTEBELLO PHYSICIANS MEDICAL GROUP,
    INC.
NOVA HEALTHCARE MEDICAL GROUP, INC.
NOVA PHYSICIANS MEDICAL CORPORATION,
    INC.
OB-GYN MANAGEMENT, INC.
PHYSICIAN NETWORK OF WHITTIER MEDICAL
    ASSOCIATES, INC.
PHYSICIANS MEDICAL GROUP OF FLORIDA,
    INC.
PRIMARY CARE MEDICAL GROUP AT LITTLE
    COMPANY OF MARY HOSPITAL, INC.
PRIVATE PHYSICIANS GROUP AT STANFORD,
    A MEDICAL GROUP, INC.
SAN ANTONIO HEALTH PARTNERS, INC.
ST. FRANCIS CARE MEDICAL GROUP
STERLING ANESTHESIA, INC.
STERLING CREDENTIALS VERIFICATION
    SERVICES, INC.
STERLING EMERGENCY MEDICAL CARE, INC.
STERLING EMERGENCY TREATMENT
    ASSOCIATES, INC.
STERLING HEALTHCARE GROUP, INC.
STERLING HEALTHCARE MEDICAL CORP.
STERLING HEALTHCARE OF TEXAS, P.A.
STERLING MEDICAL GROUP OF MICHIGAN,
    INC.
STERLING MEDICAL GROUP OF MICHIGAN,
    P.C.
STERLING MEDNET EMERGENCY SERVICES,
    INC.
STERLING MIAMI, INC.
STERLING MICHIGAN, P.C.
STERLING PROFESSIONAL EMERGENCY
    PHYSICIANS, LLC

STERLING RADIOLOGY, INC.
STERLING REGIONAL EMERGENCY SERVICES,
    INC.
STERLING SUB TEXAS, INC.
THE DOCTORS OFFICENTER MEDICAL GROUP
    OF DALLAS, P.A.
THE DOCTORS OFFICENTER MEDICAL GROUP
    OF HOUSTON, P.A.
THOMAS-DAVIS MEDICAL CENTERS, P.C.
VIP IPA, A PROFESSIONAL MEDICAL
    CORPORATION
VIRGINIA HEALTH PARTNERS, INC.
VMS MEDICAL IPA, INC.

Debtors and Debtors in Possession

By: _____
Name:
Title:


_Joseph A. Pardo_ , as Trustee

By: _____